UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>          *Plaintiff*,<br>v.<br><br>BRANDON WADE SHIFFLETT, *et al.*,<br><br>          *Defendants*. | CASE NO. 3:22-cv-00031<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  State Farm seeks a declaratory judgment that it owes no duty to defend or indemnify Brandon Shifflett under its insurance policies for a wrongful death lawsuit brought by the administrator of Sara Hammond's estate, Verma Hammond. Plaintiff State Farm and Defendants Brandon and Hammond have filed cross-motions for summary judgment. For the following reasons, the Court will deny State Farm's motion and will grant Defendants' motions.

**Background**

  On December 1, 2020, Brandon, at age 17, shot and killed Sara Hammond at the residence of Wade Shifflett, Brandon's grandfather, in Stanardsville, Virginia. Dkt. 1-3 ¶¶ 1, 5. Sara's death resulted in civil and criminal actions, as well as this insurance coverage dispute.

  On August 13, 2021, Hammond, the administrator of Sara's estate, filed a wrongful death lawsuit against Brandon in the Circuit Court for Greene County, Virginia. *Id.* According to the civil complaint, Sara was Brandon's "social guest" at the time of the shooting. *Id.* ¶ 6. Hammond alleges that Brandon "used a firearm he obtained at [Wade Shifflett's] residence." *Id.* ¶ 7. She further claims that Brandon "failed to use ordinary care in his activities or conduct to avoid

1

injury to" Sara and that he "carelessly and/or recklessly pointed a firearm in Sara's direction" and "carelessly and/or recklessly discharged a firearm while it was pointed in Sara's direction," shooting and killing Sara. *Id.* ¶ 12.

Hammond asserts two theories of recovery: Count I intentional wrongful death and Count II negligent wrongful death. *Id.* ¶¶ 14–24. In the intentional wrongful death claim, she asserts that Brandon "intentionally shot and killed Sara." *Id.* ¶ 15. She claims that his conduct was "intentional, willful, and conducted with malice aforethought" and that he "acted with reckless disregard as to how his acts would affect Sara." *Id.* ¶ 16. She also alleges that Brandon "knew, or should have known that his alleged actions were unlawful and that great harm to Sara . . . would likely result," and that he "was aware, from his knowledge of existing circumstances and conditions, that his conduct would probably result in injury to others." *Id.* ¶¶ 17–18. In the negligent wrongful death claim, she alleges that Brandon "negligently shot and killed Sara." *Id.* ¶ 22.

On October 25, 2021, Brandon pled guilty to Second Degree murder in violation of Virginia Code § 18.2-32. Dkt. 28-2 at 1; Dkt. 28-1 at 7. At the guilty plea hearing, he admitted that "on or about the 1st day of December 2020, in the County of Greene, [he] feloniously did kill and murder in the second-degree one Sara Hammond against the peace and dignity of the Commonwealth, in violation of Virginia Code Section 18.2-32." Dkt. 28-1 at 7. He received a term of forty years imprisonment with nineteen years suspended. Dkt. 28-2 at 1.

At the time of the shooting, Brandon resided in and was a member of Wade Shifflett's household. Dkt. 1 ¶ 14. State Farm had issued two insurance policies—a Homeowners Insurance Policy and a Personal Liability Umbrella Insurance Policy—to Wade Shifflett, which were in

effect at the time of the shooting. Dkt. 1-1 at 1; Dkt. 1-2 at 1. Brandon is insured under both policies. Dkt. 1 ¶¶ 30, 38.

The Homeowners Policy provides that:

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, [State Farm] will:

1. pay up to our limit of liability for the damages for which the insured is legally liable . . .; and

2. provide a defense at [its] expense by counsel of [its] choice . . . .

Dkt. 1-1 at 44 (emphases removed). "Bodily injury" is defined as a "physical injury, sickness, or disease to a person," including "death resulting therefrom." *Id.* at 24. An "occurrence" is defined as an "accident, including accidental exposure to conditions." *Id.* at 26. The policy excludes "bodily injury" that (1) was the result of willful and malicious or criminal act or omission of the insured; (2) was intended by the insured; or (3) "would have been expected by the insured based on a reasonable person standard." *Id.* at 45.

The Umbrella Policy provides that:

If a claim is made or a suit is brought against an insured for damages because of a loss for which the insured is legally liable and to which this policy applies, [State Farm] will pay on behalf of the insured, the damages on behalf of the insured that exceed the retained limit.

Dkt. 1-2 at 10 (emphases removed). It further provides that "[i]f a suit is brought against any insured for damages because of a loss to which this policy applies," State Farm will defend the insured "when the basis for the suit is a loss that is not covered by any other insurance policy but is covered by this policy." *Id.* (emphases removed). The policy covers bodily injury resulting from a loss. *Id.* at 10. "Bodily injury" is defined as "physical injury, sickness or disease to a person, including death resulting therefrom." *Id.* at 5. "Loss" is defined as "an accident, including accidental exposure to conditions, which first results in bodily injury . . . during the

policy period." *Id.* at 6. However, the policy excludes coverage for bodily injury that is "expected or intended by the insured" or "the result of any willful and malicious act of the insured." *Id.* at 13 (emphases removed).

In its complaint for declaratory judgment, State Farm asserts Brandon's conduct is excluded from coverage under these policies because Sara's death (1) was not the result of an accident, (2) was expected or intended by Brandon, and (3) was caused by Brandon's criminal and/or malicious act. Dkt. 1 at 8–9.

## **Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, she must present sufficient evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most

favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

When cross-motions for summary judgment are before a court, a court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted)).

## **Applicable Law**

Under Virginia law,[1] courts construe insurance policies according to standard principles of contract interpretation. Courts "must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." *Blue Cross & Blue Shield of Va. v. Keller*, 450 S.E.2d 136, 140 (Va. 1994).

The burden to establish coverage under a policy's terms rest on the insured. *Bituminous Cas. Corp. v. Sheets*, 389 S.E.2d 696, 698 (Va. 1990). To determine whether an insurer has a duty to defend, "the district court need not make independent findings as to what actually occurred . . . but rather need only decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004). In doing so, Virginia courts apply the eight corners rule by comparing the "four corners" of the underlying complaint to the "four corners" of the policy. *AES Corp. v. Steadfast Ins. Co*, 725 S.E.2d 532, 535 (Va. 2012); *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009).

---

[1] Virginia law governs this case because the policies were issued in Virginia.

An insurer's duty to defend is broader than its "obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *AES Corp*, 725 S.E.2d at 535 (quoting *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265–66 (Va. 1996)). However, "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." *Id.* at 535–36.

If the Court determines that State Farm has no duty to defend Brandon in the underlying civil action, then, as a matter of law, State Farm also has no duty to indemnify Brandon in connection with the underlying civil action. *See, e.g.*, *Admiral Ins. Co. v. Marsh*, No. 3:12-cv-601, 2013 WL 3270555, at *3 (E.D. Va. June 26, 2013) (noting that "[t]he duty to defend imposes a broader duty than the duty to indemnify," and that thus "'if there is no duty to defend . . . there [also] can be no duty to indemnify'") (quoting *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 427 (E.D. Va. 2000)).

## Discussion

A. **Plaintiff State Farm's Motion for Summary Judgment**

   1. **Duty to Defend**

Virginia law requires this Court to apply the eight corners rule. *See AES Corp.*, 725 S.E.2d at 535. Adherence to the eight corners rule compels the conclusion that State Farm owes a duty to defend Brandon on the claims in the underlying complaint.

However, State Farm claims there is an exception to the eight corners rule that allows this Court to consider Brandon's guilty plea and conviction. Dkt. 28 at 9–11. In support of its argument, State Farm relies on *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220, 221 (Va.

2010).² Dkt. 34 at 2–3. But *Copp* allows no such thing.³ *Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 813–14 (W.D. Va. 2013) ("*Copp* provides no support for the proposition that an insurer may rely on extrinsic evidence to deny the insured a defense"); *Glob. Title, LLC v. St. Paul Fire & Marine Ins. Co.*, 788 F. Supp. 2d 453, 461 (E.D. Va. 2011) (similar). State Farm also does not cite any case in which a Virginia court considered evidence of an insured's guilty plea and conviction in determining whether an insurer had an obligation to defend under a policy. Without the Supreme Court of Virginia's authority to vary from the eight corners rule, State Farm will owe a duty to defend if Brandon's conduct, as alleged in the underlying complaint, falls within the scope of coverage provided by the insurance policies and none of the policies' exclusions apply. *See Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978); *Cap. Env't Servs., Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 642 (E.D. Va. 2008) ("a breach of the Eight Corners Rule" is only allowed "where the highest court of the relevant

---

² State Farm's reliance on *State Farm Fire & Cas. Co. v. Lewis* also fails to support going beyond the eight corners rule to consider a guilty plea. No. 3:14-cv-391, 2014 WL 12570949, at *1 (E.D. Va. Dec. 15, 2014). In *Lewis*, the court considered the factual allegations in the underlying complaint and the insurance policy's language to reach its ruling. *Id.* at *4 (holding that an accident was not alleged). The court's later statement that it "would reach the same conclusion if its analysis initially focused on indemnification" "[g]iven his admission in the criminal case that he intentionally threw the bottle toward a crowded stage of performers . . ." did not alter the court's analysis on the duty to defend. *Id.*

³ Far from sanctioning courts to go beyond the eight corners rule, *Copp* addressed the lower court's failure to consider material language within those eight corners—specifically language in the insurance policy that excluded coverage for "bodily injury or property damage intended or expected by the insured" except "to bodily injury or property damage caused by an insured trying to protect person or property." 692 S.E.2d at 222. While the lower court found that the insurer had no duty to defend, the Supreme Court of Virginia concluded that the policy's exclusion "require[d] consideration of an insured's claim that he or she caused bodily injury or property damage trying to protect person or property in evaluating whether there is a duty to defend in a given case." *Id.* at 225. Thus, because a fact finder could believe the insured's self-defense claim and thus the insured's conduct could be covered under the insurance policy, the court reversed the lower court's judgment and found that the insurer had a duty to defend. *Id.*

7

jurisdiction has explicitly authorized it," which the Supreme Court of Virginia has not done).

Alternatively, State Farm argues that the allegations in the underlying complaint do not support a duty to defend. Dkt. 28 at 16–17, 21. First, it claims that Brandon's alleged conduct is not covered because Sara's death did not result from an "accident." *Id.* at 16–17. The Homeowners Policy covers liability for "bodily injury" that was "caused by an occurrence." Dkt. 1-1 at 44. An "occurrence" is defined as an "*accident*, including accidental exposure to conditions." *Id.* at 26 (emphasis added). The Umbrella Policy covers bodily injury resulting from a loss. Dkt. 1-2 at 10. A "loss" is defined as "an *accident*, including accidental exposure to conditions." *Id.* at 6 (emphasis added). Thus, if Sara's death, as alleged in the underlying complaint, was not the result of an "accident," State Farm has no duty to defend under either of its insurance policies.

Because neither policy defines "accident," the Court considers how the Supreme Court of Virginia defines "accident" in insurance coverage cases. It has commonly defined an "accident" as "an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." *AES Corp.*, 725 S.E.2d at 536 (internal quotation marks omitted). An "accident" refers "to an incident that was unexpected from the viewpoint of the insured.'" *Id.* (quoting *Utica Mut. Ins. Co. v. Travelers Indem. Co.*, 286 S.E.2d 225, 226 (Va. 1982)). An accidental bodily injury "happens by chance, or unexpectedly." *Id.* (internal quotation marks omitted); *see Utica Mut. Ins. Co.*, 286 S.E.2d at 226 (providing that "[a]n intentional act is neither an 'occurrence' nor an 'accident' and therefore is not covered by the standard policy"). "For coverage to be precluded" under an insurance policy "because there was no [accident], it must be alleged that the insured subjectively intended or anticipated the result of its intentional act or that objectively, the result was a natural or

8

probable consequence of the intentional act." *AES Corp.*, 725 S.E.2d at 536.

Merely pleading negligence "does not compel a court to find that a claim was based on" an "accident" under Virginia law. *Id.* at 537 (citing *Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F. Supp. 2d. 638, 651–52 (E.D. Va. 2008)). Even if a party was "negligent and did not intend to cause the damage that occurred," the question remains whether the underlying civil action alleges that the bodily injury sustained was "the natural and probable consequence[]" of the insured's intentional acts. *Id.*

To be sure, no obligation to defend exists when the factual allegations involve only intentional conduct by the insured. *E.g.*, *Lewis*, 2014 WL 12570949, at *4 (holding the insurer did not have a duty to defend under its insurance policy because "[d]espite the engrafting of a count of simple negligence, the predicate factual recital [in the amended complaint] simply does not portray an accidental occurrence"); *Builders Mut. Ins. Co. v. J.L. Albrittain, Inc.*, No. 1:19-cv-1315, 2020 WL 2297187, at *6 (E.D. Va. May 7, 2020) (concluding no factual allegations support the negligence claim); *Nationwide Mut. Fire Ins. Co.*, 568 F. Supp. 2d at 651–52 (reasoning that "the factual allegations" relating to the insurer "unquestionably show that his alleged actions were intentional" and that there was "simply nothing in these factual allegations that might plausibly be construed to mean that the injuries" the insurer caused "were the result of an 'accident' or were not intended"). Thus, the Court must look to the nature of the claims and the facts alleged in the underlying complaint to determine whether the bodily injury could have resulted from an accident. *See TRAVCO Ins. Co. v. Patteson*, No. 3:22-cv-135, 2022 WL 1572251, at *3 (E.D. Va. May 18, 2022).

Here, the underlying complaint alleges two claims: Count I intentional wrongful death and Count II negligent wrongful death. *See* Dkt. 1-3. To support these claims, Hammond alleges

9

that Brandon "carelessly and/or recklessly pointed a firearm in Sara's direction" and "carelessly and/or recklessly discharged a firearm while it was pointed in Sara's direction" and shot and killed Sara. *Id.* ¶¶ 12. While the allegations are sparse, they do not eliminate the possibility that Brandon's conduct was unintentional, and that Sara's death resulted from an "accident." Depending on the evidence introduced at the underlying state trial, if the guilty plea is not introduced, it is possible for a jury to find that Brandon carelessly pointed a gun in Sara's direction and negligently and carelessly discharged the gun and that her resulting death "happen[ed] by chance, or unexpectedly." *AES Corp.*, 725 S.E.2d at 536 (internal quotation marks omitted). Based on these factual allegations, a jury might find that Brandon did "not intend[], design[], or reasonably anticipate[]" Sara's death. *Id.* (internal quotation marks omitted).

This case is similar to *TRAVCO Ins. Co.*, 2022 WL 1572251. In that case, the insured sought a declaration that it did not have a duty to defend for any liability alleged in the underlying complaint. *Id.* at *1. There, the underlying complaint alleged two claims: (1) a negligence claim, which provided that the insured was "handling a firearm [that] was accidentally discharged and struck the Plaintiff;" and (2) a battery claim, which stated that the insured "became angry with [Plaintiff] because [Plaintiff's] dog chewed [his] Christmas lights" and then "allegedly, pulled out a handgun, pointed it at [Plaintiff], and shot him in the face." *Id.* at *3 (cleaned up). The court in *TRAVCO* concluded that the negligence theory could possibly succeed in the underlying suit and consequently the insurer had a duty to defend the insured. *Id.* at *3–4. So too here—a possibility exists that a jury could find Brandon liable under the negligent wrongful death theory.

Second, State Farm argues that Brandon expected or intended Sara's death and thus is not

10

covered under the insurance policies, Dkt. 28 at 17–21, which exclude coverage for bodily injury that was intended or reasonably expected by the insured, Dkt. 1-1 at 45; Dkt. 1-2 at 14.[4] Virginia courts have found that allegations involving intentional shootings fall within this "Expected or Intended Acts Exclusion." *See, e.g.*, *Travelers Indem. Co.*, 245 S.E.2d at 249 (finding the underlying complaint alleging that the insured "was lying in wait" for his victims and that he shot at a victim "many times" supported that the insured intended and expected the resulting bodily injuries); *Morris v. Travelers Indem. Co.*, No. 1928, 1993 WL 946167 (Va. Cir. 1993) (noting the insured allegedly fired the gun intentionally and that he "should have expected that his wild shooting would cause injury to Sheriff Morris or to anyone else who may have been in the line of fire"); *Ins. Co. of N. Am. v. Davis*, No. 8074-3, 1983 WL 210278 (Va. Cir. 1983).

However, unlike those cases, the factual allegations in Count II do not eliminate the possibility that Brandon shot Sara unintentionally or that he did not reasonably expect her death. *See* Dkt. 1-3 ¶ 12 (alleging Brandon "carelessly and/or recklessly pointed a firearm in Sara's direction" and "carelessly and/or recklessly discharged a firearm while it was pointed in Sara's direction"). And as previously discussed, the underlying complaint contains factual allegations

---

[4] State Farm argues that Brandon's guilty plea precludes him from arguing that Sara's death was an "accident," unintended, or unexpected. *See* Dkt. 28 at 11–17. Under Virginia's evidence rules, Brandon's guilty plea will be admissible in the underlying civil action. *See* Va. Code § 8.01-418 (providing evidence of a guilty plea "shall be admissible" in "any civil action . . . which arose out of the same occurrence"). However, the Supreme Court of Virginia has "consistently held that the Commonwealth and a crime victim cannot be considered synonymous parties or related privies." *Mikhaylov v. Sales*, 784 S.E.2d 286, 290 (Va. 2016); *see, e.g.*, *Selected Risks Ins. Co. v. Dean,* 355 S.E.2d 579, 582 (Va. 1987) ("hold[ing] the trial court correctly decided the criminal conviction was not conclusive evidence that Dean intentionally injured Berry"). It has specifically recognized "that a criminal confession of guilt does not have preclusive effect on a subsequent civil action because though founded on the same fact, they are distinct remedies, prosecuted by different parties and for different purposes." *Id.* (internal quotation marks and citation omitted) (cleaned up). As such, Brandon's guilty plea will not preclude him from arguing in the underlying civil action that he negligently and/or unintentionally killed Sara.

which might support that Brandon acted negligently in causing Sara's death. *See, e.g.*, *TRAVCO Ins. Co.*, 2022 WL 1572251, at *4 (finding a duty to defend despite allegations supporting both an intentional shooting and a negligent shooting).

Third, State Farm argues no coverage exists under its policies because Sara's death was the result of a willful and malicious or criminal act.[5] Dkt. 28 at 21–22. Both the Umbrella Policy and the Homeowners Policy exclude coverage for bodily injury resulting from the insured's willful and malicious act. Dkt. 1-2 at 13; Dkt. 1-1 at 45. Neither of the policies define "willful" or "malicious." *Id.* The Supreme Court of Virginia, however, has defined "willful" in a non-criminal context as "an act which is intentional, knowing, or voluntary." *Angstadt v. Atl. Mut. Ins. Co.*, 492 S.E.2d 118, 122 (Va. 1997) (citing *Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 62 (1964), *overruled in part on other grounds*)). Because the factual allegations do not eliminate the possibility that Brandon shot Sara unintentionally, the willful and malicious act exclusion does not exclude coverage at this stage of the litigation.[6]

---

[5] The Homeowners Policy excludes coverage for a criminal act. *See* Dkt. 1-1 at 45. Because the underlying complaint does not reference any criminal charges against Brandon or Brandon's guilty plea and conviction and because the Court is bound by the eight corners rule, Brandon's conduct, as alleged in the underlying complaint, does not fall within the criminal act exclusion at this stage of the litigation. *See AES Corp.*, 725 S.E.2d at 535.

[6] In its summary judgment motion, State Farm also argues insurance contracts that allow coverage for willful and/or criminal misconduct are against public policy. Dkt. 28 at 22–23. And as such, State Farm claims that any provision in the Homeowners Policy or the Umbrella Policy providing coverage for murder is in violation of public policy in Virginia. *Id.* at 23. State Farm correctly notes that "[i]f a contract violates public policy, it is void and of no legal effect." *Shuttleworth, Ruloff & Giordano, P.C. v. Nutter*, 493 S.E.2d 364, 366 (Va. 1997). The Virginia Code, however, provides that "[i]t is not against the public policy of the Commonwealth for any person to purchase insurance providing coverage for punitive damages arising out of the death or injury of any person as the result of negligence, including willful and wanton negligence, but excluding intentional acts." Va. Ann. Code § 38.2-227; *see also United Servs. Auto. Ass'n v. Webb*, 369 S.E.2d 196, 197 (Va. 1988). In light of this code section, it does not appear against the public policy of Virginia for an insurance policy to provide liability coverage for a death resulting from an insured's negligence or willful and wanton negligence. Here, the factual allegations within Count II do not eliminate the possibility of a judgment finding that Brandon

Accordingly, the Court is unable to find as a matter of law that the underlying civil action is excluded from coverage under the insurance policies. *See Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995) ("[A]n insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy."). Therefore, State Farm has a duty to defend.

### 2. Duty to Indemnify

The Court also considers State Farm's request for declaratory judgment as to the duty to indemnify to be premature. State Farm has a duty to defend, and the underlying trial had not yet happened. *See Penn-Am. Ins. Co.*, 368 F.3d at 413 (noting "an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint") (emphasis in original); *Pa. Nat. Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 827 (E.D. Va. 2010) (explaining "a duty to indemnify springs from the facts actually discovered or proven at trial") (internal quotation marks omitted); *Builders Mut. Ins. Co. v. Futura Grp., L.L.C.*, 779 F. Supp. 2d 529, 535 (E.D. Va. 2011) (concluding "the legal analysis necessary for the duty to indemnify determination cannot take place until *after* the ultimate factual findings are made in the state court suit") (emphasis in original). Thus, State Farm's motion for summary judgment will be denied.

### B. Defendants' Motions for Partial Summary Judgment[7]

Hammond and Brandon move for partial summary judgment as to the duty to defend.

---

unintentionally, but negligently shot and killed Sara. As such, State Farm's policies obligating it to defend Brandon does not violate the public policy of Virginia.

[7] In his brief in support of his motion for partial summary judgment, Brandon adopted and incorporated Hammond's argument in the brief in support of her partial summary judgment motion. Dkt. 30 at 1.

Dkts. 29, 31. For the reasons discussed above, their motions will be granted because the Court, in applying the eight corners rule, concludes that the factual allegations in the underlying complaint support a possibility that the underlying civil action could be covered under the policies.

## Conclusion

For the reasons above, State Farm's motion for summary judgment will be denied, Dkt. 27, and Defendants' motions for partial summary judgment, Dkts. 29, 31, will be granted. The Court will issue a declaratory judgment that State Farm has a duty to defend Brandon in the underlying civil action. This case will be stayed as to the issue of indemnity until the underlying civil case is resolved. *See Nautilus Ins. Co.*, 968 F. Supp. 2d at 821.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

Entered this 23rd day of May, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

14